This is 4090827 Safeworks v. Julia Wills and the Illinois Workers' Compensation Commission. For the appellant, we have Christopher St. Peter and for the appellee, Gary Stokes. Christopher St. Peter, Illinois Workers' Compensation Commission May it please the Court, Counsel, my name is Chris St. Peter here on behalf of Appellant Safeworks Illinois. I'm here today to protect and clarify my client's rights as an Illinois medical provider who has issued a subpoena under the Illinois Workers' Compensation Act. In particular, I'm here to clarify my client's rights and responsibilities under three sources of Illinois law. First, Section 16 of the Illinois Workers' Compensation Act. Second, the 2000 appellate court case of Clayton v. Ingalls Memorial Hospital. And third, the Illinois Medical Records Act. The trial court below made no direct finding with regard to any of these three sources of law. Instead, it simply found Safeworks in contempt of court for failure to comply with a duly issued subpoena issued by the Illinois Workers' Compensation Commission and ordered that Safeworks produce copies of all records. It's appellant's position that the commission nor the trial court has such authority. The commission's authority to issue subpoenas is derived from Section 16 of the Illinois Workers' Compensation Act. In particular, the act gives the commission the authority to, quote, issue subpoenas duque tecum requiring the production of such books, papers, records, and documents as may be evidence of any matter under inquiry and to examine and inspect the same in such places or premises as may relate to the question in dispute. Later in the same section, the statute requires, quote, the parties applying for such subpoenas shall advance the officer and witness fees provided for in civil action pending in circuit courts of this state. Your honors will note that the words copying or photocopying do not appear in Section 16 of the act, nor do they appear anywhere else in the Workers' Compensation Act as it relates to subpoenas of medical providers. I thought the rules of civil procedure applied. The rules of civil procedure? Clayton specifically ruled that they do not apply in this case. And further, the rules of civil procedure or what does apply are the rules set out for the circuit courts that require a $20 witness fee and a $0.20 per mile statutory traveling fee. But this Section 16, as interpreted by Clayton, only requires the deponent to appear with originals for inspection or examination by the arbitrator. It, nor does Clayton, require any deponent to produce copies of the records. Well, the Administrative Rights under the Workers' Compensation Act say that the Illinois Common Law Rules of Evidence and the Illinois Evidence Act shall apply in all proceedings handed before the Industrial Commission, except to the extent they conflict. Are you arguing that they conflict? Your Honor, I don't dispute that the Code of Civil Procedure and the Rules of Evidence apply in proceedings, but not as it relates to the subpoena power of the Commission. Are you saying that that rule, that subpoena power, conflicts with the rules of civil procedure? In this sense, yes, because the Commission's authority to issue subpoenas is limited to Section 16, which only requires production of originals. There is no such provision to produce photocopies. Well, there is if there is agreement between the parties. If there is agreement, yes. In this case, there was no agreement. And how does that happen? Is it because your client is performing independent medical, so your client is not a party to agree to that? Those are the facts in this case, Your Honor. However, there are other cases and other situations where I believe counsel has dealt with SafeWorks, in which they're a medical provider, not just an IME examiner. And it's reached a point that my client seeks clarification of its duties and its rights, whether it's an IME provider or an actual treater. It doesn't dispute that a properly issued subpoena with statutory mileage and statutory travel fees requires the opponent to appear on the date of hearing. Well, this is certainly not the first one of these cases we've had at this court. And I don't know whether or not there are any going on in other districts of the appellate court. And it's obvious that there is some question out there on the part of medical providers as to what their duties are and how much they can charge and so on and so forth. But I would assume that even medical providers understand that for the process of workers' comp to work, somebody's going to have to take a look at some medical records somewhere along the line. And if it's your position that your obligation is to show up before the commissioner, get paid $20 and bring the originals, how many people do you think you can employ to comply with all the subpoenas that will be issued throughout the Central Illinois area? That's a good question, Your Honor. My point is that in the practical world, your position is silly. Not legally, just practically. And at some point, rather than having multiple cases before the 4th District Appellate Court, maybe people ought to sit down with the commissioners and the workers' comp commission and say, here's a problem, can you solve it for us? Now, that's not a legal statement for me. That's not an indication of how I'm going to rule on the case. It's just sitting back and seeing these cases and stepping back from it and saying, you know, this is really getting kind of silly. Your Honor, I don't agree. They feel that the $20 statutory fee and mileage expenses is unsustainable. The alternative is also unsustainable. If there's 3,000 medical documents that need to be copied for free, that's unsustainable also. And I'm not disagreeing with that. But I would also add to that, paying attorneys to come to the Illinois Appellate Court on a regular basis to fight these things is also unsustainable. It's true, Your Honor. That's why we hope we can resolve this. Well, but we don't have the authority to dictate rules to the commission. We have no jurisdiction over them. I understand that, Your Honor. We would seek clearance or clarification in this particular case and other cases with similar facts. And in particular, in this case, we do seek that you reverse the finding of contempt of court. The order that the trial judge issued ordered SafeWorks to produce copies of the medical records. Again, we maintain that he has no such authority to do so. Those records were produced on October 7, 2009 in open court. Yet the contempt awarded $2,500 in change of attorney's fees and costs. Now, if the court is going to order such medical records, copies of medical records, appellant argues that the Illinois Medical Records Act applies. This act is the only statutory requirement in Illinois law that deals with photocopies of medical records from Illinois physicians, hospitals, and other medical providers. And the scope of the act is clear. It states, and I'm quoting, at 735 ILCS 5-8-2001B, Every private and public health care facility shall, upon the request of any patient who has been treated in such health care facility, permit copies of such records to be made by him or her or his or her health care provider or authorized attorney. It goes on to provide for a graduated fee structure that allows for costs to be recouped to copy these medical records. Now, in this case, if the trial court seeks to issue copies of medical records, we argue that the Illinois Medical Records Act should apply. Does your client have the capability of making microfilm or microfiche? I'm not aware if they do at this point, Your Honor. But I know that there are fees set out for digital copies, for microfilm. The act is all-inclusive of the fee structures. In asking that question, you make me wonder why these documents couldn't even be produced electronically since most medical records are kept electronically now. That would be free. I don't know the specifics of how they store their records or how they would have produced their records. And I'd also suggest that even if it is in digital format, that's not completely free. There's still software and other expenses incorporated. And I think the act has laid out a graduated scale to encompass those costs. Do you know what those costs actually consist of today? Your Honor, I don't have that in front of me. I know that when it originally enacted, the paper costs were, I believe, $2 per page for the first 50 pages. And it graduates down from there, up to page 200, and then something to the effect of 50 cents per page. But I'm not certain about those, Your Honor. That's interesting that you say that's what they were. Because now, in 2010, according to the comptroller's website, there's a handling charge of $24.44. $1 through $25 is $0.92. $0.26 through $0.50 is $0.61. An excess of $0.50 is $0.31. But microfilm or microfiche, which is why I asked you the question, is $1.53. Thank you, Your Honor. So that's substantially less than what it was. I may have been wrong off the top of my head trying to recite what the fees were, and I apologize. That is costly. What was your client attempting to charge? Well, in this case, it was only for an IME, independent medical examination. So the records were very minimal. But this has further reaching implications than just this case. I don't know that they provided a charge. The original subpoena issued by counsel asked for appearance or, in lieu of an appearance, copies of the records. And it's appellant's position that they don't have to comply with producing copies of the records. Nor did they provide any fee for such copies. They directed counsel to contact the person that requested the IME in the first place, the insurance company. In a subsequent correspondence, they directed counsel to contact our firm, Keith Camel and Associates, who represents SafeWorks Illinois. Do you know how many of these cases you have? We have, to my knowledge, three, Your Honor. I'd like to also address counsel's motion for fees and costs under Rule 375. Illinois Supreme Court Rule 375B allows for sanctions where a reviewing court determines an appeal is frivolous or made for improper purpose. An appeal will be deemed frivolous where it is not reasonably well-grounded in fact and not warranted by existing law. And an appeal will be deemed to have been taken for an improper purpose where the primary purpose of the appeal is to delay, harass, or cause needless expense. It is in no way appellant's intent to delay the proceedings, to proceed in bad faith, to increase the cost of litigation, or any other bad faith grounds. Instead, as stated earlier, appellant seeks to protect and clarify its rights and responsibilities as a medical provider who received a subpoena under the Illinois Workers' Compensation Act. What do other doctors do? Is there anything in the record about what other doctors do? Not that I know of, Your Honor. There was some discussion of customary practice before the commission, but I believe counsel would be better equipped to answer that as he was the one testifying to that. Okay. If there's no further questions, I have nothing further. Thank you, Mr. Stokes. Peter? Thank you. Mr. Stokes? Thank you. May it please the Court, my name is Gary Stokes, counsel. I represent the appellee, Julia Wills. In response to your last question, Justice Myerscough, I've been doing this for over 25 years. There's been only one clinic and or physician who has ever refused to comply with a subpoena under the standard workers' compensation subpoena rules, and that's Dr. Fletcher in SafeWorks. That's the only one. I've had four or five previous occasions. I can't give you an explanation for why. Even in the IME situation? Even in the IME situation. IME and treating. Generally, it's IME for me because I represent petitioners, and his primary practice, I believe, is mostly independent medical examinations for insurance companies. I just find it impossible to believe that Barnes Hospital produces their records for an IME for $20. Barnes and St. Louis? Mm-hmm. They're out of state. We have to pay them. They're not subject to any subpoenas. Oh, okay. In state, yes. All hospitals comply. Well, thank you for that tidbit. Sure. In this case, Justice Alvin nailed it. They're asking you to legislate. They're asking you to insert in Section 16 the Medical Records Act and the application of the Medical Records Act. I couldn't agree more. People should come together, come to the commission, get your lobbyist, Dr. Fletcher, get your lobbyist, bring him to Springfield, say, we have an issue here. It needs to be resolved. We want some amendments. Don't stand up there and defy the law, refuse to abide by subpoenas, and then try to cause as much noise in the courts to try to get the courts to legislate something. Well, but what about the provision that says that the rules of civil procedure apply unless they're in conflict with the commission? Well, there is case law out there, and I didn't see that in counsel's brief, but there are a number of cases that hold that the rules of civil procedure don't apply to workers' compensation. I know you made reference to Clayton, which I think is distinguishable. Yes, the Clayton case in particular. What this case is about, well, let me emphasize what this case is not about. This particular case, and I listened with interest to the Holtkamp case. You just had orals on February 16th, I believe, and with great interest. Mr. Dykstra and I both used to work for Harvey and Stucco many, many years ago. I actually remember that. He's on the opposite side of the fence as I am. It was interesting that we have a respondent's attorney and a petitioner's attorney coming forward on this with almost identical facts. The difference in the Holtkamp case was that at least in that case, Dr. Fletcher's defense was that they came to the call, they answered the subpoena by bringing the original records to the call. And I thought it was interesting Mr. Dykstra in rebuttal said, but they wouldn't let me see them. So the game goes on, but they said at least all we have to do under Section 16 is to bring those records. We've satisfied the subpoena. They didn't even do that in my case. They completely ignored it. Not once have I ever asked for records in this case. I sent a subpoena commanding their appearance on May 18th, and they ignored it. The fact of the matter is that this case, this particular case, is about whether they, whether subpoenas apply to them or not. Because if you read, I see three justices up here who I know were attorneys before they dung the black roads. And I would ask each of you to go back and read the two letters I received from SafeWorks and ask yourself, how would you respond to that? Tell me that those two letters don't say subpoenas don't apply to us. Subpoenas don't apply to us. They didn't say anything about copying charges, wanting a certain amount of money for the records. They said effectively subpoenas don't apply to us, go elsewhere. Don't bother us. Go elsewhere. And that's why we had to turn around and subpoena them to produce the original records in court at the call, on the date of the call. The only difference between this case and Clayton v. Engels is that in Clayton, the petition's attorney subpoenaed the records to be produced at a date and time that was not even the call date. And the appellate court said, you can't do that. You shouldn't do that. But they waived any argument about the propriety of the subpoena in that case by not even filing a motion to quash it in that case. They didn't file any motions to quash or anything else in this case either. They simply didn't show up. Let me deal specifically with some of the misrepresentations that have been made by the appellants in this case. Number one, they said the subpoena of April 30, 2009 demanded, and I quote, unlimited copies at its, referring to SafeWorks, sole cost, end quote. That's false. If you look at C7 in the record, at the subpoena itself, it commanded personal appearance with original records in hand. They ignored it. Subpoenas don't apply to us. Number two, Appellant SafeWorks was not, this is their claim, Appellant SafeWorks was not notified of the hearing on May 18, 2009, and therefore, quote, could not file any response, present any documents, or appear at the hearing. That's in page seven of their brief. That statement alone, that sentence alone warrants fees and costs under our Rule 375 motion. The subpoena was personally served that demanded production on May 18, and they say we weren't aware of it. It was personally served. Now, maybe Dr. Fletcher's office is personally served by a sheriff's deputy every day, and this was no unusual circumstance, and they forgot, but I somehow don't believe that to be the case. What did you ask for as a remedy in the contempt proceeding? I wanted the records. I want the report. That's what I insisted on having. Dr. Fletcher... But you asked that he be held in contempt. Oh, yes. Absolutely. And be sanctioned in some fashion? I asked for attorney's fees and costs. I didn't ask to be thrown in jail or anything like that. You didn't ask that he be brought to the hearing. No. To be honest, I never thought it would get... At each step, I have believed that they were going to look at this and say, wait a minute, we dropped the ball. We didn't comply with the subpoena. Here's your stuff. We're sorry. But at each step, I am surprised, because it keeps going and keeps going. Despite the difference here, they don't even have the arguable front, as they did in Holtzkamp, of saying we at least came to the call and produced the records. They even put it in their brief in this case that their only obligation was to appear at the call and bring the original records. They said that, but yet they didn't do it. At our hearing on the contempt citation, they presented not one iota of evidence, zero. They state another claim, a third claim, that the trial court in this matter found SafeWorks in willful and consummationist contempt for its, quote, its failure to provide unlimited copies at its sole cost. Again, that's false. That's not what Judge Skoransky held. Judge Skoransky said this has nothing to do with copy costs. Neither does this case here today. The subpoena didn't request or demand copies, free or otherwise. It demanded that you come to the commission with records in hand and produce them. They didn't do that, and that was not the court's order that they order them to make unlimited copies. That's on C-31, Judge Skoransky's order. Again, the position is we're not subject to subpoenas. Fourth, their claim. Trial court's contempt order was deficient because it failed to provide a purge condition. False. Judge Skoransky's order said produce the records. Produce the records within 14 days. That was the purge condition, and then they did. So the argument that this court's order was somehow deficient because it didn't provide for a purge condition is, again, just false. It's wrong. If Apollon's suggesting somehow that the court didn't have the authority or discretion to award attorneys' fees and costs, I take issue with that as well. They didn't come right out and say it, but that was inferred. They clearly can't. Trial court clearly can't. And, again, with all due respect, I think that they're warranted here as well. Well, is contempt of the commission contempt of the court? Yes, I think it can be, because the commission can't enforce its own orders. That's why the provision and the rules, 7030.50, provides for a procedure whereby we can't enforce it. It can't enforce its own rules, and when you go to the circuit court, what are you asking them for? To enforce the commission's order and to find them in contempt if they didn't have a legitimate basis for refusing to abide by the commission's order. The commission doesn't have contempt power, as far as I understand. So an arbitrator and or commissioner cannot hold anyone in contempt. All they can do is certify it to the trial court under the rule, and then it's up to the trial court to see if there was a legitimate basis for the dispute. Judge Skowronski took evidence on it. He heard argument. He said there was no legitimate basis for this. In fact, he said this business about costs and so much per page is an afterthought, and he's right. All you have to do is go back and read those two letters from SafeWorks to realize it. Let's be totally honest here, what this is all about, okay? What this case is about is that Dr. Fletcher is, again, in my 25 years of experience, only Dr. Fletcher, is complaining about the fact that Section 16 doesn't provide a remedy for getting costs per page copy costs. That's what his complaint is. And it upsets them that Clayton v. Ingalls, the appellate court case, used strict statutory construction, as they should have, to say it's not in there. Go get your lobbyist. Go get an amendment. But we don't have the power or authority to amend the Workers' Compensation Act to do this, and they don't want that. Well, but the statute that governs the trial court, the circuit court, says the circuit court shall compel obedience by attachment proceedings as for contempt, as in a case of disobedience of the requirements of the subpoena from such court on a refusal to testify therein. Yes. I realize I'm just reading this to you. Sure. Shall compel obedience by attachment proceedings. Doesn't that mean your remedy is your circuit judge Swaronski should have issued a body attachment and brought Dr. Fletcher in? To have Dr. Fletcher brought into court in shackles? Isn't that what that says? It does say that. But I believe that the intent of the law there, even if that's not strict statutory construction, the intent of the law there is that the court would have at its disposal any of the various remedies available to the court in a contempt situation, and that would include simply awarding attorney's fees and costs. I think that you're right. I think that would have been interesting. Frankly, I didn't want to go that far to ask that he be cuffed by the sheriff and brought to court. But I believe, again, that it would not get that far. But you're right, Justice Myerscough. It's right there. It uses the word attachment proceedings. But I don't think that that means that the court can't use other means, including, as I said, award of attorney's fees and costs. Do you have a case? I don't have a case on that. I've researched almost all the cases that I could find that dealt with this specific issue, and Clayton v. Ingalls is about the only one that comes up with respect to the subpoena powers. But we're not asking for that. We're not asking that he be shackled. But we do believe that it was within Judge Skowronski's authority to award the attorney's fees and costs. And, again, I haven't seen anything different between our trial court and at this stage. I understand the argument they want to make, but this is not the way to make it. Do it the other way. Don't make me, the private attorney, have to come up and answer these charges. It's been my entire day coming over here, not only writing briefs and everything else, in a case where you clearly essentially admit that you didn't respond to the subpoena and that you had an obligation to do so. Whether you want additional fees for records is a completely entirely different matter. It has no bearing in this case because I never asked for copies. In fact, I bought a scanner because I saw this happening. I bought a scanner and a laptop. If they showed up at the call with their original records, I was going to scan them. If they were going to insist that I'm bringing the original records in and I'm taking them back and you're not going to be able to see them, you're not going to be able to keep a copy, I was going to scan them. So what is the status of the underlying case here at this time? Is it completely stalled? You know, it's interesting and an excellent question. It's not stalled at this point. We were able to move forward, again, because respondents, attorneys, chose to go ahead and produce the reports, which was exactly what happened in the four or five previous cases that I had where Dr. Fletcher himself said... Is this in the record, Mr. Stokes? It is. It's in the evidence, in the testimony. It said that we're not going to produce the records. It was the respondent's insurance company's attorney that paid the ransom to get those records or I would have been here a long time ago. So what is your assurance that you've got all of the records? You know, I won't know for sure because I have to rely on opposing counsel and their good faith in saying this is everything. This is what we're giving you. It's all I can do. I don't know. This is quite a dilemma. It is a dilemma, and I don't know if it was Justice Appleton in the Holtkamp case or not, but one of the gentlemen did ask the question, this has become a big deal in your field. And to be honest, I would take issue with it. It hasn't been. It's only been with one particular doctor. By the way, I was on that panel, and I'm not a gentleman. It wasn't you that made that statement. I recognize your voice. You asked the interesting question, why is Clayton v. Engels wrong? Why is it wrong? And Mr. Boddicker said, we don't believe it's wrong. I don't see how you square the Holding and Clayton v. Engels with their position. You asked that question, and it was an excellent question, and you didn't get a good answer in my opinion. Thank you. Thank you, Mr. Stokes. Rebuttal. Please support. While this case may involve some policy issues that are better suited for the legislature, there is a specific remedy that this honorable court could provide, and that is to vacate the trial court's contempt order. The records have been produced. Well, would we vacate the contempt order or vacate the sanction and adopt what I think Mr. Stokes said, which is what is provided for when your client fails to comply with the subpoena and does so deliberately, is to haul him off to the jail? Your Honor. I mean, we could do that, right? We certainly could. However, in this case, our client did not intentionally fail to appear. How did he not intentionally fail to appear? You know that there is an appointment somewhere before a commissioner of the Workman's Compensation, and you know you're supposed to be there, and you don't go. Are you saying he had a traffic accident on the way? Our client made it clear to counsel that they were represented by Keith Campbell and Associates in a letter dated October 28, 2009. Counsel before the trial court was asked if he extended notice to the firm, Keith Campbell and Associates, and he said he did not. He did not feel the need to extend that courtesy. We maintain that it's not a mere courtesy. Notice is required as set out by the Illinois Workers' Compensation Act and the rules governing practice. What in those rules say that the doctor's attorney in another matter has to be notified of the hearing date? May I hear him? Please do. In the rules governing practice, specifically Rule 7030.20C outlines the framework for notice for hearings. It includes a provision that timely notice includes 15 days notice given for the motion for trial date to the opposing party. An opposing party was provided a completed request for hearing and goes on listing other qualifications. We maintain that knowing that SafeWorks was represented by counsel, and knowing our adverse interests in this case, we would be considered an opposing party and should be afforded notice just as a named party would be afforded notice. Counsel had already received a letter from the client indicating to please contact our attorney for any further compliance with the subpoena. Well, you're not claiming Dr. Fletcher didn't get that notice. I'm sorry? You're not claiming Dr. Fletcher didn't get that notice, right? Well, he got the subpoena on May 5th. The trial was May 18th. He did not get notice within 15 days. It's improper and timely. It seems to me that you're suggesting that Dr. Fletcher and his attorneys are entitled to a whole lot more courtesy in practice than Dr. Fletcher was willing to give to counsel on the other side. Your Honor, I feel that an opponent should be afforded the same notice requirements as other parties. He's not an opponent. He's there to produce his records. I mean, all he is is a carrier pigeon. He just has to put a few sheets of paper in an envelope and tootle on over to wherever the commission is meeting. That's his only obligation, and he didn't do it. That's true, Your Honor, and had he received proper notice, we submit that he would have done so with the original records until for examination or inspection by the arbitrator. So Dr. Fletcher made the decision that this wasn't 14 days out, he wasn't going to appear, his attorneys didn't get notice, he wasn't going. Is that what you're representing? The firm never received notice. We would have appeared on his behalf and would have provided records for counsel to inspect. They didn't want you. They wanted Dr. Fletcher. They didn't even really want Dr. Fletcher. They just wanted his report. But apparently Dr. Fletcher won't send a report unless he's attached to it. So now they need Dr. Fletcher as well. Your Honor, the appellant maintains that they would have appeared had they received notice. Was Dr. Fletcher in his report or just by attorneys? An agent of Dr. Fletcher's or the attorney's firm. Would you have the report? Yes, we would have, sir. All right, time is up. We'll take this matter under advisement and adjourn for the day. Thank you.